DENA MARIE YOUNG
State Bar No. 215344
LAW OFFICES OF DENA MARIE YOUNG
2751 4th Street PMB #136
Santa Rosa, CA 95405
Telephone (707) 528-9479
Email: dmyounglaw@gmail.com

Attorney for Defendant
DEVON WENGER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEVON WENGER,<br><br>Defendant. | No. 4:23-cr-00268 JSW<br><br>**DEFENDANT'S REPLY TO RESPONSERO MOTION FOR JUDGMENT OF ACQUITTAL (FRCP 29); MOTION FOR NEW TRIAL (FRCP 33)** |

Defendant, DEVON WENGER, by and through his attorney of record, Dena Marie Young, hereby submits the following Reply to the United States' Opposition to Defendant's Motion for Judgment of Acquittal and Motion for New Trial.

**ARGUMENT**

**I.**

A. <u>The Conspiracy Conviction was Procured Using Falsified Evidence in Violation of Due Process</u>

In its opposition, the government asserts that the evidence presented was sufficient to support the conspiracy conviction. Yet, the government makes light of the fact that its theory is built on lies. Harris was ready, willing and able to say anything the government wanted him to say. After all, he expects to

-1-
CR-23-00268 JSW – REPLY MOTION FOR JUDGMENT OF ACQUITTAL / NEW TRIAL

avoid substantial prison time not only for drug dealing, but for taking advantage of a vulnerable friend in order to defraud a mortgage lender. Despite his involvement in selling steroids to multiple officers, importing steroids from other countries and being part of a national sales ring, the only person he was only asked to testify against is Devon Wenger. All of his eggs are in one basket.

Mahoney was equivocal to what he was buying. When asked by the government, he said it was steroids, but when asked on cross about buying peptides, he did not deny that. Further, Harris said Mahoney did not want to buy steroids, but Mahoney said he did. Even though Mahoney made his own purchase arrangements with Harris, without any participation from Mr. Wenger, they both agreed on the ridiculous (and clearly contrived) story that they did not trade payment and delivery information, so Mr. Wenger had to complete the transaction (presumably because neither one could remember how to use the phone).

To lend credibility to this story, the government produced an altered package to match up to Harris' story about an order. The postal inspector who testified could not (or more likely - would not) produce the original tracking information. This package changed over time not only in weight but in dimensions. The package presented in court did not match the package originally sent. It did not even match the description of the package in the search warrant.[1] The government makes light of these discrepancies, saying that no package was necessary to support the conviction. However, the package was presented by the government to bolster its cooperating witness. This is not a small discrepancy, it is falsified evidence which had an impact at trial just as the government intended it should.

The prosecutor's knowing use of false evidence violates the defendant's right to due process. See *United States v. Barham*, 595 F.3d.2d 231, 241-242 (5th Cir. 1979), citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959); see also *Giglio v. United States*, 405 U.S. 1501, 154 (1972) - ["A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury."] Such evidence cannot be used to support the conspiracy conviction in this case.

---

[1] It is notable that the government has not produced a declaration from Special Agent Zoback explaining the discrepancies between the package produced in court, the package originally sent, and the package described in her search warrant.

B. <u>Evidence of Deletion of Records was Similarly Manipulated by the Government</u>

The government insists that the testimony of Cabrera and Holcombe establish that no one associated with the government altered the contents of Mr. Wenger's phone. Nothing could be further from the truth. Neither Holcombe nor Cabrera obtained the phone directly from Mr. Wenger. Neither had a clear recollection of who actually received it, nor could they say how much time elapsed between when the phone was taken and when it was delivered to them. There is no way to know who handled the phone up to that point. The testimony of Holcombe flatly contradicted the testimony of Cabrera as to how long they had the phone. The evidence established that Cabrera had the phone for over an hour, and that she manipulated the contents of the phone in an attempt to prevent messages from auto-deleting. The notes show that messages were read. The isolation of the phone from the internet only bolsters the fact that any deletions (intentional or not) had to be made by the agents.

The government relies on computer forensics, but they do not show when the messages and contacts were deleted or by whom. They are also limited to the inquiries made by Holcombe who only looked for the things he wanted to find. Nor can they show that the phone was not altered in the hours prior to the extraction. Absent proof of when the messages were deleted, the government cannot establish who deleted the messages, let alone why. In order to compensate for this failure, the government deliberately elicited false testimony regarding the timing of the deletion of a particular SIGNAL message. The government had Holcombe testify that a SIGNAL message was deleted during the time after first contact with the FBI and Wenger turning over his phone. Further it is false to imply that this message was deleted by Mr. Wenger, when all SIGNAL messages were set to auto-delete. Nor is this deletion relevant in the issue of intent as the contents of said message are entirely unknown.

The government further argues that its expert disclosures were adequate simply because they revealed the subject matter to be discussed. This type of disclosure is wholly inadequate under Fed. R. Crim Proc., Rule 16. Rule 16(1)(G)(i) requires (in relevant part), that the disclosure for each expert witness must contain: a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C); and the bases and reasons for them. In this case, the government asserts, in

essence, that defense counsel should have asked the defense expert what opinion the government expert was going to offer. That is not how Rule 16 is intended to work. The defense expert should have an opportunity to evaluate the opinion to be offered by the government expert, not to speculate on what that opinion might be.

Finally, the government offers no explanation as to why it failed to obtain, or even preserve, Mr. Wenger's iCloud account, when it knew that the phone was backed up less than 12 hours before it was seized. It is a glaring omission as the government pursued iCloud data from Harris and others. It would have been important to the government's case to establish the timing of the deletions. The only reasonable inference is that the government knew that comparison to the recent backup would show that the data had been altered, deleted and destroyed while the phone was in the hands of the agents, rather than by Mr. Wenger.

As above, the evidence was manipulated by the government to suit its theory of the case. The use of such evidence violates due process, rendering the conviction unsupportable.

## II.

## Motion for New Trial (FRCP 33)

A. <u>Irregularities in the Handling of the Jury and Its Verdict Cast Doubt on the Reliability of the Jury Process</u>

The government makes light of the improprieties in the handling of the jury's verdict as "sheer speculation." The government dismisses the observations of the defendant's witnesses because government counsel did not make the same observations. Of course, the government attorneys and agents were on the opposite side of the courtroom. The government claims not to have known the verdict in advance of the reading. None of these statements made by government counsel in the motion opposition were in the form of a declaration under penalty of perjury, nor do they address the knowledge of the numerous agents and attorneys who were present in the courtroom when the jury was initially let in, but who did not return for the reading of the verdict a few minutes later, presumably because they knew the outcome. Inferences drawn from direct observations are circumstantial evidence, not "sheer speculation."

The government also asserts that Mr. Wenger does not argue that the jury's verdict changed. That is contrary to the observations made by the defense witnesses. Absent an investigation, Mr. Wenger cannot prove conclusively that the verdict changed. However, given the comments of the court staff, and the clear change in the jury's demeanor, it is a reasonable inference that such a change occurred. The defendant need only demonstrate a credible risk of prejudice, thus the presumption of prejudice to the defendant's Sixth Amendment and due process rights may arise even when the record does not disclose what actually transpired or whether the incidents that did occur may have been harmless. See *Godoy v. Spearman*, 861 F.3d 956, 968 (9th Cir. 2017), citing *Remmer, supra* at 229. It is the government's burden to prove that the defendant was not prejudiced. See *Remmer v. United States*, *supra*. In this case, the government has produced no evidence whatsoever to counter the direct observations contained in the defendant's witness statements.

Procedural irregularities and the observed conduct of court staff and government agents raise serious questions as to the integrity of the jury verdict and deny Mr. Wenger due process and the Sixth Amendment right to a fair trial.

B. <u>Manipulation of Evidence by the Government Denied Mr. Wenger a Fair Trial</u>

As discussed above, the government altered or manipulated key pieces of evidence and elicited false testimony. These tactics also denied Mr. Wenger his due process right to a fair trial.

### III.
### CONCLUSION

For the foregoing reasons, Mr. Wenger respectfully requests that this Court grant his motions for judgement of acquittal on both counts of the Indictment or order a new trial.

Dated: June 4, 2025                               Respectfully Submitted,

                                                                           /s/ Dena Marie Young
                                                         DENA MARIE YOUNG

                                                         Attorney for Defendant
                                                         DEVON WENGER